Chief Justice Marshall
delivered the opinion of the Court.
In March, 1850, Blythe filed his bill, charging that in 1842, he had obtained a judgment against Burnsides for $183 71 due of the 1st day of February, 1841, and costs, subject to a credit of $100, paid on the 1st day of April, 1841, on which an execution had issued and been returned “no property found,” and that the judgment remains wholly unpaid. The bill further charges that Burnsides “is now fraudulently removing from the State of Kentucky, and removing his family and effects, including money and property sufficient to pay your orator’s debt aforesaid, and will do so unless restrained by your Honor's interposition, without having-satisfied your orator’s demand aforesaid, and with the fraudulent intent to cheat, hinder and delay your orator and his creditors in the collection of their just debts,” and that he avows the purpose of leaving the State of Kentucky permanently. In consideration whereof, he prays process and an answer, and a writ of ne exeat against said Burnsides, restraining him from leaving the State of Kentucky, and for general relief. Upon this bill, an order was made by a Police Judge, directing the Clerk to issue such process and writ, upon the execution of bond, &c. ■ by Blythe, and permitting Burnsides to give bail to said Blythe, in the sum. of $150, conditioned that he will not go or attempt to go into parts beyond the Commonwealth, and satisfy said debt, interest and costs, &c. This writ was executed on the 19th of March, 1850, by taking the body of Burnsides, and delivering him to the jailer, and on the next day Burnsides gave bail, conditioned not to go or *7 attempt to go into parts beyond the Commonwealth of Kentucky.
Decree of the Circuit Court.
The statute of J 800: (Slat. Law 1226) in relation to bonds in cases of writs of ne exeat, which requires the Judge to endorse the name of the surety therein, is in effect repealed by the act of 1827: (Slat. Law 815) which requires the clerk to approve the surety.
At the succeeding June term of the Circuit Court, •Burnsides moved to quash the writ of ne exeat, and the proceedings under it, on the grounds—
1st, That the bill did not make out a case to authorize the writ.
2d-, That the order for the writ did not name any person to be taken as surety, (for the complainant.)
3d, That the surety taken was not approved, &c. by any Judge or Justice, &c. And
4th, That the order directed, and the writ required a bond to be taken from Burnsides, and a bond was in fact taken, stipulating more than Was required by law.
The motion to quash was overruled, as was also a demurrer to the bill, and the cause having been submitted without further answer, the Court decreedjihat Burnsides be enjoined and restrained from departing from the limits of the State of Kentucky, until he pays complainant’s debt, &c., set up in his bill, andi'thatjhe pay complainant’s costs herein; and the complainant is allowed to proceed at law upon defendant’s bond herein, for any breach, &c. Burnsides assigns for error, that the Court erred in not quashing the writ — in not sustaining the demurrer — in not dismissing the bill — and in the decree rendered.
Before entering upon the main question as to the sufficiency of the bill to authorize the writ of ne exeat, we shall notice the other grounds of the motion to quash. The requisition of the act of 1800, (Statute Law, 1226,) that the Judge or Judges granting the writ of ne exeat, shall indorse on the order therefor the.name or names of the security or securities to be taken in the bond (from the complainant,) is in effect repealed by the second section of the act of 1827, regulating injunctions, &c.: (Statute Law, 815.) It is there enacted that in writs of ne exeat, and other restraining orders in Chancery, granted by Justices of the Peace or Circuit Judges, in vacation, it shall be the duty of the Clerk of *8 the Circuit Court of the county wherein the suit is to be prosecuted, to approve of and accept good and sufficient security in the injunction bond or other bond required by the order, &c., which being applicable to the case of ne exeat, &c., ordered by a Police Judge, to whom authority has been given since the enactment of the statutes above referred to, furnishes a sufficient answer to the second and third grounds of the motion to quash.
The condition ••of the bond of the defendant in 'Cases of ne exeat ¡is that the defendant “ shall not < depart from the Commonwealth” • any change of 'terms, however, which do not change the legal -obligation-of the ''•bond, would not •render it invalid; “but no additional obligation should *be imposed, but. that which the flaw requires.
With regard to the fourth ground: it was said by this Court in Basket vs. Scott, (5 Littell's Rep. 208,) that the act of 1800 plainly implies that on a writ of ne exeat the bond should be taken with the condition only, that the defendant should not depart from the Commonwealth, which the- Court also considered as being the only proper bond under the writ. In this case the writ requires the bond to be conditioned that the defendant “shall not go or attempt to go” out of the Commonwealth, and the bond is taken accordingly. The order of the Judge requires as a further condition that the defendant shall pay the debt. But this requisition having been disregarded in the writ and bond, can not affect their validity. Between the bond actually taken and that required by the writ, there is no discrepancy,' and the only question in this part of the case is, whether the condition as expressed in the writ and bond is such as the law does not require or authorize, and whether on that ground they should have been quashed.
We concur in the construction given to the act of 1800 in the case just referred to, so far as that construction prohibits the imposing of any further condition or burthen upon the defendant than that he shall not depart from the Commonwealth. But this condition is necessarily subject to limitation. It is not in law absolute- or perpetual. It is imposed for a special purpose, and is subject not only to be discharged by the accomplishment of that purpose, but also to be modified or discharged by the tribunal to which it is to be returned. The expression 'of these implied limitations in the bond, *9 as “that the party should not depart from the Commonwealth but under leave or order of the Court, unless the debt should be paid;” would not violate but would rather express the law.
But this though an addition to the words, would be no addition to the stipulations of the bond, but would be a restriction or limitation upon them, which would be implied if the bond expressed the condition in the peremptory form, “ that the party should not depart” &c. The additional words in the present case, certainly do not limit or restrict the condition as it would stand without them, but apparently add to the restraint by prohibiting not only an actual departure, but an attempt to depart from the Commonwealth. If there could not be an attempt to depart, with an actual departure, or if an attempt to depart could not be proved but by proof of actual departure, then as there could be no available or substantial breach of the stipulation not to attempt to depart, which would not also be a breach of the stipulation not to depart, the former stipulation would in effect, be but a repetition of the latter, “.and the two would only amount to the one condition or * stipulation not to depart. But the facts of the present case show very clearly, that there may be an attempt to depart from the Commonwealth without an actual departure, and that the attempt, though unsuccessful, may be susceptible of proof as a substantial independent fact. So that the words “or attempt to go,” &c., .do amount to a substantial addition to the condition as it would stand without them.
It is true, this additional stipulation against attempting to depart, may be regarded only as a means of securing the observance of the stipulation not to depart, and it may be true that an attempt to depart, though defeated, being an attempt to violate the undertaking not to depart, would in a moral point of view b6 equivalent to an actual violation. But it would not be so regarded by the law at least so far as liability bn the bond is concerned. The additional words “ or attempt *10 to go,” impose a liability which would not otherwise exist by making that a breach of the bond which without them would not be a breach. And it is by imposing this additional liability that the stipulation against, the attempt is to secure the observance of the stipulation against actual departure. But as the statute intends that there shall be no other condition, but that the party shall not depart, it necessarily intends that there shall be no liability on the bond but for actual departure, and therefore precludes the imposition of any other liability as a means of preventing departure.
The writ of ne exeat is to give a right to bail in cases hr equity, as bail was demandable in cases at law. And the act of 1800 gave the right in cases where the jurisdiction was concurrent, but it does not exist in behalf of a judgment creditor to operate upon the person of tile debtor to enforce payment
The condition, therefore, so far as it stipulates against an attempt to depart is unauthorized and illegal, and upon the principles of the case above referred to, it would seem that the bond might therefore be deemed wholly void. .
But if the bond might stand good so far as it conforms to the law, and be deemed void so far only as it is illegal, of which we entertain great doubt, and if? therefore, it should not have been quashed on the ground now under notice, we are of opinion that the bill does not make out a case proper for the writ of ne exeat. That writ, as applied to civil cases, was resorted to by the Court of Equity as a means of furnishing in favor of equitable demands, a security similar to that which was furnished to legal demands by the requisition of bail. Our act of 1800, expressly authorizes it in cases of concurrent jurisdiction, and thus removes any doubt which might have existed in such cases, on account of the complainant’s having had a remedy at law, in which he might have had bail. But is the present a case, either of exclusive or concurrent jurisdiction, within the sense of those terms,- as used in reference to this subject? It is said truly, that the bill makes out-a case in which an attachment might have issued. But that is a case of ancillary jurisdiction, given for the purpose of aiding the legal remedy for the enforcement of a judgment at law. And so far from this jurisdicrion being a ground for issuing a writ of ne exeat to restrain the person of the debtor, it is perfectly obvious. *11 from a recurrence to the legislation of the last thirty years upon the subject of collecting debts, that the remedy by attachment in Chancery was given, and has from time to time been enlarged, not for the purpose of -facilitating the access to the defendant’s person, as a means of coercing the debt or security for it, but for the purpose of facilitating the access to his property and assets, and as a substitute for the remedy against his person, which had been substantially abolished. It is a singular anomaly,if a proceeding adopted in equity, by analogy to the proceedings at law, and for the purpose of putting equitable creditors on a footing of substantial equality with those whose demands were legal, may now be resorted to for giving to purely legal demands a remedy against the person of a debtor, to which he is no longer subject in airy proceeding at common law. And it would be a perversion of the statutes, which, in consideration of the exemption of the debtor’s person from resti’aint, except so far as in extraordinary cases may be necessary to secure the application of his property to the payment of his debts, have authorized Courts of Equity to secure this object ' by attaching his property without restraining his person, to regard the power thus conferred, as making a case for a writ of ne exeat, which shall subject the debtor to arrest in the first instance, and to actual imprisonment and detention, from which he .may be discharged, not by surrendering his effects, but only by paying the debt, or giving bond not to leave the Commonwealth, to be followed by a decree perpetuating this restraint until he shall pay the debt.
0ut present of ^1?®-dial law rather goes for the pro-sfrafng the*1 per-son of debtors'
It is the policy and obvious, and indeed express intent of our present system of laws for the coercion of debts, , ’ to secure the appropriation of the debtor’s effects, and leave his person unrestrained. The attachment in chancery reaches his effects only, the Court having power to imprison for a contempt in refusing to make the proper disclosures when required. And although in a certain state of facts, an arrest is authorized in civil actions at law, the bail bond by which the defendant *12 may |je instantly discharged from imprisonment, impcrses no other condition but that he shall not remove his effects from the Commonwealth until the judgment, should one be obtained, is satisfied. The facts stated in the bill would authorize an attachment, and are, in substance, sufficient to authorize bail at law. But the complainant neither asks for an attachment, nor for a discovery, nor prosecutes an action on the judgment, in which bail might have been required; but, abandoning these remedies against the debtor’s property, asks for a ne exeat for the imprisonment and restraint of his person, not as necessary for reaching his property, but as the direct means of coercing payment.
If the exigency of the writ could be satisfied by a surrender of the debtor’s property, or by a bond against its removal until the debt should be satisfied, this remedy would be in harmony with the general system, and might be useful and appropriate when a judgment debtor is leaving the commonwealth without having given bail. We do not know, however, that such a modification of the law is at all requisite, since the remedy by attachment, and by demanding bail, is sufficient for all ordinary cases; and there may be, and doubtless are occasional cases, in which a ne exeat alone would secure the ends of justice, by preventing the departure of a fraudulent debtor, until there might be an opportunity of compelling a disclosure and surrender of his concealed effects. But the present bill makes out no such case. For all that appears, an attachment or a bail-bond would have secured the complainant’s debt. For it is not charged that the debtor’s effects, (other than money) were not sufficient to pay the debt; nor is it even charged explicitly that he was taking all of his effects with him ; and, as already stated, there was no prayer for an attachment, nor any prayer nor ground laid for a discovery.
There was, therefore, no necessity and no case for a ne exeat, as a means of effectuating the ancillary jurisdicof the Chancellor by way of attachment, and certainly *13 there was no occasion for a ne exeat, to aid or effectuate any original jurisdiction of the Chancellor, either exclusive or concurrent, for enforcing equitable demands. The demand is. purely legal, and such as the Chancellor has no jurisdiction over, except in aid of the common law remedy, or on the ground of circumstances which preclude or impede a resort to that remedy. And if the writ of ne exeat, not having been repealed or modified, may be resorted to in its original form, and for its original purpose of effectuating the jurisdiction over equitable demands, we are satisfied that it cannot be resorted to at pleasure as a substitute for the attachment, as a' means of enforcing legal demands, and upon grounds which would merely authorize an attachment; but that in cases of attachments in chancery for the enforcement of such demands, it can only be resorted to, if at all, when it is shown to be necessary for the effectuation of this equitable remedy, as for the pnrpose of compelling a discovery of assets, on which the Chancellor’s power might attach.
Turner and Caperton for plaintiff; Burnam for defendant.
No such case being made out by the present bill, we are of opinion that the ne exeat was improperly awarded; that the writ and bond should have been quashed.
Wherefore, the decree is reversed, with costs, and the cause remanded, with directions to quash the writ of ne exeat, and the proceedings thereon, and to dismiss the bill with costs.